THE AUTO-FEDAN HAY PRESS COMPANY, *Appellant,* v. GALE C. WARD, *Appellee.*

No. 17,911.

### SYLLABUS BY THE COURT.

1. WARRANTY — *Breach — Rescission of Contract — Reasonable Time.* Where a farm implement is purchased under a warranty including a provision that if it does not work satisfactorily the purchaser shall notify the seller, who may send an expert to adjust it, and if the seller's expert or agent fails to make it work satisfactorily the seller shall take it back and refund the purchase price, if paid; *held,* that the purchaser must test the machine fairly, and if it does not comply with the contract must give the required notice, and if the seller fails to make it work satisfactorily the purchaser must return the machine within a reasonable time.

2. ——— *Same.* What constitutes such reasonable time is a question of fact to be determined from all the circumstances of the case.

3. ——— *Whether Press Was as Warranted—Question of Fact.* If, at the time of this transaction, hay presses of different sizes and designed to make different sized bales of hay were in use, and if the hay press in question was of a smaller size and designed to make smaller bales than some of the others but worked satisfactorily in making the bales it was designed to make, there was no breach of warranty if the press required more power when used to make larger bales.

Appeal from Marion district court. Opinion filed April 12, 1913. Reversed.

*D. W. Wheeler,* of Marion, for the appellant.

*W. H. Carpenter,* of Marion, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought by appellant to recover on a promissory note for $125, with interest, and upon an unpaid balance of an account of $75 and interest, the note and account being for the purchase price of a hay press.

. The answer of the defendant set up four grounds of defense. The first was a general denial; the second admitted the purchase of the hay press, but alleged that it was sold to him by the plaintiff upon the following written and printed warranty:

"The Auto-Fedan Hay Press is sold under the following guarantee and agreement; that every press is well made· and of good material. The Auto-Fedan Hay · Press Co. agrees to furnish free F. O. B. Kansas City any parts shown to be defective within 6 months from date of sale; that if operated according to the printed directions, with proper management, it will do more work, with the same exertion than any two-horse power· press on the market; that it is durable and easy to operate with a self-feed that actually feeds. That in case purchaser fails to operate the machine satisfactorily, he shall notify our authorized agent selling him the press and the home office; that if said agent fails to make the press work successfully, that ·the home office shall have opportunity to send an expert to make the machine work properly, unless the difficulty is of such nature that they advise by letter, but if the Auto-Fedan Hay Press Co. fails to make it work satisfactorily, the press shall be taken back and the purchase price, if paid, refunded."

Two other defenses were pleaded, and a demurrer thereto was properly sustained. The defendant prayed judgment against the plaintiff for $50, not including claims made in the two defenses demurred to.

Thereupon the plaintiff filed a motion to require the defendant to make his answer more definite and certain by setting up the names of the agents or employees of the plaintiff to whom the alleged verbal notice was given; also to state· the time and place at which such notice to the employees was given. The motion was sustained as to the name of the person to whom notice was given but overruled as to the remainder of the motion. Thereupon ´ the defendant amended his answer by interlineation, as follows, "To-wit: one Mr. Ross, whose first name is to the

defendant unknown, who was acting as the authorized agent of plaintiff." The ruling on this motion was erroneous. It was necessary to the defense that the appellee show reasonable diligence in notifying the appellant of any claimed failure in the warranty to give appellant a reasonable opportunity to remedy the defect, if any existed. There appears to be no evidence of any interview between the appellee and the agent, Ross, until about thirteen months after the purchase of the hay press, and about the time the appellee claims to have notified Ross that the machine was his or the company's.

There was evidence that there were hay presses on the market of different sizes; that the press in question was of the smaller size, and was designed to make a bale of reasonable size but smaller than the large presses were designed to make. Also, that when the larger sized bales were made upon this press the draft on the team was very heavy. The appellee himself testified that the machine ran easy enough in making a sixty- or sixty-five-pound bale but very heavy in making an eighty- or eighty-five-pound bale.

The contract of warranty is silent as to the size of bales in the making of which the machine was warranted to "do more work with the same exertion than any two-horse power press on the market." In this situation it is to be presumed that the machine was to be used to make bales of the size which it was designed to make, provided the machine was designed to make a bale of ordinary or fair size. There is no evidence that a sixty- or sixty-five-pound bale is not one of an ordinary or fair size.

The appellant requested the court to instruct the jury, in substance, that to entitle the defendant to rescind the contract he must return or offer to return the property within a reasonable time, and that if the appellee kept and operated the hay press, knowing it did not comply with the warranty, from July or Au-

gust, 1909, to the latter part of the summer of 1910, without offering to return it, the verdict should be for the plaintiff for the unpaid portion of the purchase price. This request was refused.

There being no allegation that the appellee was induced to keep the machine by the promise of the appellant or its agent that it would or could make the machine work satisfactorily, we think this instruction should have been given.

The court, however, did give instruction No. 4, which is as follows:

"You are instructed that if the hay press in question in this case did not comply with the warranty and that the defendant honestly believed that it did not so comply, that the defendant would have the right to return or offer to return the same to the plaintiff or its duly authorized agent, if said machine did not comply with said warranty, and to have the contract of purchase rescinded or cancelled, but under such circumstances it would be defendant's duty to return or so offer to return the machine with a reasonable promptness after having used the machine for such reasonable time as would be required to give the machine a fair test, and if the defendant failed to return the machine or offered to return the same within such reasonable time after having discovered its defects and that it failed to comply with the warranty, and if he failed to do so, he, defendant, would thereby waive the defects in said machine and waive the conditions and terms of the warranty, unless the delay of defendant in returning the machine or offering to return the machine, and thereby rescinding the contract, was occasioned by the promise of plaintiff or its agents to fix the machine so that the same would work.

"In transactions of this kind, both parties are required to act in good faith, and neither can be permitted to take advantage of his wrong."

In his testimony as a witness, the appellee does not testify that any agent requested him to keep the machine to give the opportunity to make it work right. The appellee does testify that at one time he wrote the

company about the draft and they told him to keep the machine; that they would send another man. In reply to a question as to what time that occurred, he said he could not tell.

The jury, in answer to special questions requested by appellant, found, among others, the following facts:

"Q. 3. How long after the defendant discovered the defects in said hay press, did he keep and use said hay press? A. About thirteen months.

"Q. 5. Did the defendant ever tender back the hay press, before September, or the time Mr. W. F. Ross was at his premises? A. No.

"Q. 6. Did the defendant discover the defects he claims in the hay press before he paid the $50 in November, 1909? A. Yes.

"Q. 9. Did the defendant ever make any tender of the hay press back to any person authorized to receive it, and demand his note and payment back before the maturity of the note mentioned in question 8, if so when and to whom? A. No."

One witness testified that in January or February, 1909, the appellee used the machine in pressing seventy-five tons of hay for the witness and his father.

The jury also returned the following answers to special questions requested by the appellee:

"1. After defendant discovered that the hay press in question would not work satisfactorily, did the plaintiff from time to time send out its agents to fix said hay press so it would work? Ans. Yes.

"2. Were said agents sent out by the plaintiff from time to time while defendant had said hay press in his possession to fix said machine for the purpose of inducing defendant to keep said machine? Ans. Yes.

"3. Before said agents came out to fix said hay press, did defendant complain to plaintiff and its authorized agents concerning the working of said hay press? Ans. Yes.

"4. Did plaintiff's main expert fail to make said hay press work according to its guaranty? Ans. Yes.

"5. If you answer the last question yes, state whether defendant immediately after such expert failed to make such hay press work according to the guaranty

Hay Press Co. v. Ward.

he offered to return said hay press to the plaintiff or its authorized agent? Ans. Yes."

As shown by answers to questions 3 and 5, requested by appellant, this was thirteen months after the purchase.

In *Weybrich & Co. v. Harris,* 31 Kan. 92, 1 Pac. 271, it was said:

"Where personal property, such as a mowing or reaping machine, is sold with a warranty, and there is a breach of that warranty, the property sold not being as represented and warranted by the vendor, the purchaser has two remedies: (1) He may return the property and rescind the contract; or (2) he may affirm the contract and sue for damages for the breach of warranty. In the latter case, he affirms the contract and the amount which then is *prima facie* due the vendor is not the reasonable value of the machine, but the contract price, and the only reduction is that which results from the breach of the warranty." (Syl. ¶ 1.)

This doctrine has been repeatedly reaffirmed in this court and is the settled law of the state on the subject. Ordinarily it is said to be a question of fact whether the purchaser returned or offered to return the property within a reasonable time, but in the Weybrich case, *supra,* Mr. Justice Brewer, in writing the opinion, used this language:

"In the case at bar, as the purchasers retained the header and used it, not only during the seasons of 1880, but also during those of 1881 and 1882, they clearly abandoned the remedy by rescission of contract. A purchaser can not retain and use property, and at the same time say he repudiates and rescinds the contract to purchase. The only remedy, therefore, the purchasers had in this case was to recover damages of the vendors, by reason of the breach of the warranty." (p. 94.)

The decisions in *Cookingham v. Dusa,* 41 Kan. 229, 21 Pac. 95, and *Manufacturing Co. v. Moore,* 46 Kan.

324, 26 Pac. 703, sustain the same doctrine. In the latter case it was said:

"This defect, if it existed, was a patent one, which the defendant, who used the implement, must have seen and known from the beginning. Within the authorities cited, it must be held that the continued use of the implement after learning of the alleged defects should be regarded as a waiver of defendant's right to rescind, and that the offer to return was not made within a reasonable time." (p. 326.)

These remarks are applicable to this case. (See, also, *Implement Co. v. Haley*, 77 Kan. 72, 93 Pac. 579.)

In this case the defect, if one existed, was patent. One witness testified that it took only a few minutes to determine that the press was of heavy draft. He referred to the time when they were trying to make large bales. There is also evidence, undisputed, by a witness who was called for the appellee, in fact the son of the appellee, that the hay press was used after the time that appellee claims to have turned it over to appellant's agent, although this was only for a short time. If appellee wished to rely on the statement he testified to having made to the agent, "This is your machine," he had no right to use it at all thereafter.

By the continued use of the hay press long after the discovery that it did not comply with the warranty, and also by using the press after he claims to have delivered it to the appellant's agent, the appellee is held to have waived his right to rescind, if he had any, and to have affirmed the contract of purchase. His remedy was in damages for the breach of the warranty, which remedy was not sought in this action.

The judgment is reversed and the case is remanded with instructions to render judgment for the appellant as prayed for.