No. 18,771.

D. H. HULL, *Appellee,* v. THE PRAIRIE QUEEN MANU-
FACTURING COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. APPEAL—*Permissible Recitations in Abstract of Record.* It is
permissible to recite in an abstract that a motion for a new
trial was filed on all the statutory grounds, and also that the
special findings did not support the general verdict, instead
of setting out the motion itself.

2. PLEADINGS — *Rescission of Contract — Damages — Motion to
Elect—Granted—No Error.* A petition, if liberally construed,
declared upon a rescission of a contract and also for damages
for breach thereof. The defendant moved to require the
plaintiff to elect whether he sought rescission or damages,
which motion was granted, and the plaintiff filed an amended
petition praying for rescission, no estoppel so to elect being
pleaded or suggested except by an objection to testimony
under the amended petition. *Held,* that the defendant can not
be heard to claim that no right so to elect existed.

3. QUESTION OF LAW—*Correctly Decided by Jury—No Error.*
The divisibility of a contract was submitted to the jury, who
reached the right conclusion. *Held,* not materially prejudicial
that the court did not declare instead of submitting such
divisibility, even if it were a question of law instead of fact.

4. SALE—*Engine—Defective Parts—Question for Jury.* It was
proper to submit to the jury the question whether a certain
defective part of an engine could practicably be treated as a
"metallic piece" within the terms of a contract for the sale of
thrashing machinery.

5. SAME — *Right of Rescission — Not Improperly Submitted to
Jury.* In an action for rescission of a contract and a return
of the purchase price, whether or not a jury could have been
demanded as a matter of right, it was not error to submit the
issues to a jury and receive a verdict and answers to special
questions.

6. SAME—*Warranty—"Reasonable Time" to Rescind—Question
for Jury.* When the seller of thrashing machinery, under a
contract providing that failure to pay the notes given there-
for when due, or keeping the machinery a certain time, should
constitute a full release and waiver of the warranty, has been
notified of defects and has promised and repeatedly attempted

to remedy them, the purchaser may retain and try the ma-
chinery a reasonable time without waiving the warranty, and
ordinarily the reasonableness of such time is for the jury.

·7. SAME—*Promises to Repair.* Such promise and attempts, when
made by the general manager of the selling company, are to
be treated as made by the principal, and not as if made by an
agent without authority to vary the terms of the written con-
tract of sale.

Appeal from Sedgwick district court, division No. 1;
THOMAS C. WILSON, judge.  Opinion filed June 6, 1914.
Affirmed.

*Ezra Branine,* and *Harry W. Hart,* both of Newton,
for the appellant.

*A. L. Noble,* of Winfield, *J. N. Tincher,* of Medicine
Lodge, *Keith S. Simpson,* of Kiowa, *A. M. Cowan,* and
*Chester I. Long,* both of Wichita, for the appellee.

The opinion of the court was delivered by

WEST, J.:  The defendant appeals from a judgment
rescinding a contract to purchase a thrashing machine
outfit, and for a return of the compensation.  The
plaintiff received the machinery about July 1, 1910, and
all together thrashed, as the jury found, about 34,000
bushels of grain and plowed about 290 acres.  Early
in July, 1911, claiming that the engine and separator
were both defective and unfit for the work desired to
be done by them, the plaintiff testified that he informed
the defendant's general manager that he desired the
property taken back and the money and notes refunded.
The price of the machinery was $3157, of which the
engine was taken at $2100.  The plaintiff traded in a
thrashing outfit for which the jury found he was to
receive $1100, and paid one note of $361.75 and about
$230 freight.  The jury found that he received $2630
for thrashing and that the use of the engine for plow-
ing was worth $360.  The plaintiff alleged that the
machinery was defective, and the jury so found after
considering the testimony of numerous witnesses which

presented the usual conflict. It appears that repeated efforts had been made by the company to make the separator do proper work, but the plaintiff claimed and the jury found that it was defective in cleaning and separating the grain from the straw. The trouble with the engine was a crack or break in the ring of the fire-box door which caused the engine to leak. Attempts were made to repair this ring, but the plaintiff claimed and the jury found that the engine failed to comply with the warranty in that it contained a leak. The court left it to the jury to say in what respect, if any, the contract was divisible, with the result that the part covering the engine was found separable from the remainder.

The defendant challenges the plaintiff's right to be heard as to any matters covered by the motion for a new trial and the motion for judgment on the findings for the reason that such motions are not set out in the abstract. It is recited, however, that the motion for a new trial was filed on all the statutory grounds, and also that the special findings did not support the general verdict. This may be informal, but it is not fatal. The substance of the judgment is set out, which is proper, hence the complaint that the journal entry was not inserted is without merit.

The defendant complains that the plaintiff was permitted to amend so as to declare upon rescission, and contends that the original petition amounted to an election which precludes him from departing from an attempt to recover damages. The original petition might by a liberal construction be deemed one to recover on both causes, and as the defendant treated it as such by moving that the plaintiff be required to elect, which motion was granted and complied with, we hardly think it can be heard to urge that no such right to elect existed, especially so when it is considered that to the amended petition electing to proceed as upon rescission an answer and cross petition were filed and

no estoppel thus to elect was pleaded or suggested until raised by an objection to testimony.

Error is assigned upon submitting the divisibility of the contract to the jury, and it is argued that this was a matter of law for the court. The contract provided that if any part of the machinery could not be made to fill the warranty, that part which failed should be returned and the company should have the option to furnish another machine or part in its place, or return the money and notes given for the same, and thereby rescind the contract in part or in whole, as the case might be, and be relieved from any further liability thereon. It is urged that at least the court should have instructed that the contract was divisible as to the engine. However, while the contract was so worded as to items and prices that differences of opinion might well arise as to what parts were intended to be separable, the engine was clearly so, and was so found by the jury, and there was no serious complaint about any other machine except the separator, so that it is immaterial whether or not correct instructions were given as to the other constituent items making up the outfit. And as the finding as to the engine was correct no harm came to the defendant because the jury instead of the court reached the right conclusion. (*Behen v. Street Railway Co.*, 85 Kan. 491, 118 Pac. 213; *Cosper v. Nesbit*, 45 Kan. 457, 25 Pac. 866; *Davis v. Wilson*, 11 Kan. 74, syl. ¶ 7; *Germania Ins. Co. v. Curran*, 8 Kan. 9, syl. ¶ 5.)

That the plaintiff is not entitled to rescission as to the engine is asserted, and attention is called to a clause in the contract that "The failure of any separate machine or part thereof shall not effect the contract or liability of the purchaser for any other separate machine or any parts of such affected machine as are not defective," and another that if any metallic piece should break during the first season by reason of a flaw therein, a new piece would be furnished in its

place upon prompt return of the old to the company and it appearing to its satisfaction that the break was caused by a flaw. The court instructed that "even if you should find from the evidence that the ring in the fire-box door was defective in that there was a flaw therein, this would not entitle the plaintiff to rescind his contract as to such engine, but would only give the plaintiff the right to return to the defendant such ring as provided in said contract, provided, as elsewhere instructed, that you find the contract a divisible contract, and that it was practicable to detach and replace the ring in question." The evidence was to the effect that it would take a boilermaker and a helper about a week to replace the ring with the engine in the field, and the jury found that it was not practicable to return the ring separate from the engine. We can not agree with the defendant that it was the duty of the court to instruct that this ring constituted a "metallic piece" under this clause of the contract instead of leaving it to the jury to find whether it was practical to detach and return such ring. The repeated efforts made by the company to remedy the defect indicate anything but a desire or expectation that the purchaser should employ the necessary skilled labor and devote the required time to removing the ring for its return to the company, and the nature of the ring and its manner of attachment to the engine are such as to render it very doubtful if the parties intended by the contract to treat it as a "metallic piece" within the clause referred to, and we think there was no error in the instruction or in the finding touching such ring.

Whether or not a jury could have been demanded as a matter of right, it was not prejudicial error to submit the issues to a jury and receive a verdict and answers to special questions. (*Wood v. Turbush,* 63 Kan. 779, 66 Pac. 991; *Hixson v. George,* 18 Kan. 253, and cases cited.)

A demurrer to the plaintiff's evidence was overruled, and this is criticised on the ground that there was a

failure to show that the warranty was not waived. One provision in the contract was that a failure to pay the notes when due should constitute a full release and waiver of the warranty. It is contended that the notes due September 15, 1910, and August 1, 1911, were unpaid, and that this defeated the right to rescind. But there was testimony to the effect that when the first of these was paid the general manager had promised to make the machines work perfectly or take them back, and the second was not yet due when the interview was had with him in July, 1911. Another provision was that a failure of the machinery to come up to the warranty inside of six days from its first use should be communicated to the company, and later in the contract was a clause that "keeping the machinery after the six days allowed as above provided" should be a waiver of the warranty, and it is suggested that the plaintiff continued to keep and use the engine for one of its desired purposes—plowing—long after he knew of its defect and that he could not have kept and used it thus long for the purpose of testing it under the warranty, and therefore should be held to have accepted it. Authorities are cited upon the point that notice of claimed defects is under some contracts a condition precedent, but here the company had ample notice of all the defects complained of and continued from time to time with such notice and knowledge to attempt a remedy. These attempts were made, not by agents who were without authority to waive any contract provision, but by the general manager, who possessed such power, and whose repeated visits to the plaintiff and efforts to cause the engine and separator to do the desired work leave the matter in such a situation that the company can not well claim that strict compliance with the terms of the contract as to notice, payment and retention of machinery was not waived. The circumstances so far as waiver is concerned are to some extent similar to those in *Campbell v. Masonic Lodge,*

76 Kan. 400, 404, 92 Pac. 53, wherein it was said waiver may be express or implied and that the conduct of the plaintiffs there showed such waiver.

The defendant moved for judgment on the special findings and complains that such motion was denied. We have examined these findings and do not deem the defendant entitled to judgment thereon.

Some unimportant questions were answered "We don't know," but the essential features of the controversy were fairly covered by direct answers.

An instruction was requested that if at the beginning of the action the plaintiff was in default in payment of any of the notes given as part of the purchase price he could not recover. This was properly refused for reasons already indicated.

The following was given:

"You are further instructed that in determining whether plaintiff offered to return the thrashing rig within a reasonable time you are to take into consideration no time except that which elapsed after plaintiff knew or should have known that defendant would not fulfill its promise, if any was made, that it would put the thrashing rig in such shape that it would do its work well. In determining what was a reasonable time you are to take into account all the facts and circumstances of the case."

This is criticised for its failure to recognize the divisibility of the contract as to the engine and to give the jury clearly to understand that a promise to repair the separator would not extend the time to which he could rescind as to the engine. But we are not able to say that it had the effect of confusing or misleading the jury when considered in connection with other portions of the charge.

Finally, it is pressed upon us that the price of the engine, $2100, should be deducted from the amount of the recovery for the reason that the evidence does not justify rescission as to that portion of the machinery, whatever it may show regarding the separator. The

plaintiff testified that in October, 1910, he told the general manager the boiler was leaking around the fire-door ring and was promised that it would be fixed; that in February or March, 1911, the company sent a man who drilled out the cracks in the ring and put in plugs; that a week before that Mr. McIntire had said that they would fix the defective ring and stand the cost of it. After this man was there "the fire-door ring leaked, and the hotter it got the worse the leak, and it finally got so bad we could not do anything with it. We could not keep the fire and water in the engine at the same time." Mr. McIntire then promised to send off and get copper plugs. At one time he sent his brother down to remedy the leak. In the spring of 1911 the plaintiff testified that he had to throw up a job of plowing 30 acres because the engine failed to work; that during the time he plowed the engine leaked so badly that at times it was impossible to keep the steam up. Another witness who ran the engine testified that it leaked all the twenty-two days it was used, some days badly enough to put the fire out. Another who was an engineer testified to a similar effect, and that the last ten days he was with it the engine would leak practically a whole tank of water during a night. Another, that it was a serious defect because the steam could not be kept up. Another who was sent by Mr. McIntire to remedy the defect testified: "I knew when I finished the job that it might leak again. I knew the proper way to fix the engine was to put in a new ring." The general manager's brother testified: "As a rule such leaks get worse. . . . I was instructed to go down by my brother, Oliver McIntire. I did not consider the repair work I did on the engine a permanent job. If the plugging would not hold it would be necessary to put in a new ring. I had no instructions except to cork it." The general manager himself, among other things, testified: "The only thing to do when the plugging does not hold is to put in a new fire-door ring.

35—92 KAN.

It requires the same tools to put in a new ring in the field as it does in a boiler shop." There is no indication that the plaintiff had any notice or knowledge that the company would do nothing further towards remedying the defects until the interview in July, 1911, at which time, according to his testimony, he told the general manager, who "suggested to send down a lot of stuff to Kiowa, and for me to take it and put it on the machine and have me try it"; that he "could not do anything with it at all, and unless he would do that, why I would try to see what I could make him do," and "he said he would not take the machine back under any circumstances, unless he took it back by foreclosure." The last finding of the jury was as follows:

"Q. Did the acts and conduct of the defendant justify plaintiff in concluding that if he returned the machinery or any part of it to the place where he received it the defendant would not have accepted it? A. Yes."

The facts of the case as far as the engine is concerned, therefore, do not bring it within the rule laid down in *Weybrich & Co. v. Harris*, 31 Kan. 92, 1 Pac. 271; *Furneaux v. Esterly & Son*, 36 Kan. 539, 13 Pac. 824; *Cookingham v. Dusa*, 41 Kan. 229, 21 Pac. 95; *Aultman v. Mickey*, 41 Kan. 348, 21 Pac. 254; *Manufacturing Co. v. Moore*, 46 Kan. 324, 26 Pac. 8, and *Hay Press Co. v. Ward*, 89 Kan. 218, 131 Pac. 595, but are such as to make applicable the decision in *Implement Co. v. Haley*, 77 Kan. 72, 93 Pac. 579, wherein it was said:

"It is fairly inferable that the delay in returning the machine was induced in great part by the assurance of Dixon that the machine could be made to work satisfactorily and his continued efforts to adjust it." (p. 75.)

The cause has been thoroughly and ably presented, and we have carefully considered the questions involved, but find no material error in the record.

The judgment is therefore affirmed.

PORTER, J. (dissenting) : I am unable to concur in the affirmance of this judgment. The plaintiff, the purchaser, used the machine for thrashing 34,000 bushels of grain during the season of 1910, and used the engine for plowing 40 acres. The following season he plowed 250 acres during the months of March, April and May, with full knowledge of the condition of the machine obtained from its use the season before, and after having paid one of the notes. In the Haley case, cited in the opinion, the machine was purchased August 26, and used more or less until September 4 of the same year, when the purchaser returned it. It was held in that case that this was not an unreasonable delay in view of the fact that the purchaser was induced to keep the machine for a time by representations that it would be put in working order and by attempts of the seller to do so. I think there is no analogy between the two cases, and that the purchaser in the present case should be compelled to pay for the machine.