No. 28,381.

THE WESTERN ADVERTISING COMPANY, *Appellee*, v. L. M. CRAWFORD et al., *Appellants*.

(276 Pac. 813.)

Opinion filed May 4, 1929.

*W. R. Hazen*, of Topeka, for the appellants.

*J. J. Schenck, C. P. Schenck* and *Oscar Raines,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a contract for advertising. The jury answered special questions and returned a verdict for plaintiff. Defendants have appealed.

Generally speaking, the facts are as follows: Defendants own and operate the Gayety theater in St. Louis. The title to the property was in the name of a corporation, the stock of which is owned by defendants. The corporation leased it for operating purposes to a company, which was really a partnership composed for the most part of defendants. The partnership employed C. W. Daniels as manager of the theater, and, aside from the booking of plays, he was in full charge of the business of conducting the theater in St. Louis, employed and discharged the help, prepared advertising matter, and made contracts for advertisements in newspapers, on billboards, by printed circulars, or otherwise, collected and handled all receipts, paid the operating expenses, and remitted the balance to his employers with a detailed statement of receipts and disbursements..

The plaintiff is an advertising company, and had made a contract with the street-car company of St. Louis, by which it paid that company a stated sum for the privilege of advertising in the 228 street cars of St. Louis by cards placed in the cars. The space so contracted by it from the street-car company it sold to various cor-

porations, firms or individuals who desired to use advertising of that kind. On March 27, 1919, Daniels, as manager of the Gayety theater for defendants, executed a written contract with plaintiff, by the terms of which he purchased for defendants certain advertising space in the street cars of St. Louis, for which he, on behalf of defendants, was to pay plaintiff $177.84 per month, the advertising to begin in August, 1919, and to continue for forty weeks, covering what is generally spoken of as the theatrical season. This contract was fully carried out and the payments made thereunder. On March 19, 1920, Daniels, as manager of the Gayety theater for defendants, executed a written contract with plaintiff for similar advertising space in the 228 street cars of St. Louis for a term of forty weeks beginning August 22, 1920, at $177.84 per month.

While Daniels had been a theater manager for defendants for several years, and had managed the Gayety theater for three years, he was in fact employed for but one year at a time, and for the theatrical season beginning in August and extending to May or June. At the close of the theatrical season each year the question of his employment was taken up by him with defendants and he was each year employed for another theatrical season. This continued until in June, 1920, at which time he was not reëmployed for the theatrical season beginning in August, 1920. The partnership which had leased the theater from the corporation owner and was managing it through Daniels, as manager, was composed almost entirely of the L. M. Crawford family. There was a change in this partnership in the summer of 1920 occasioned by the death of a son of L. M. Crawford, when a daughter took the son's place in the partnership, and as between them there was also a change of the division of the net receipts from the operation of the theater. On August 11, 1920, the defendant, L. M. Crawford, wrote plaintiff as follows:

"N. Y. office desires to cut out all adv. (except newspaper) and will make no appropriation towards billboards or street cars. We have arranged to carry out this policy and look to you to cancel any existing contract. Personally, we have always believed in billboards and street cars, and it is just possible that we may want to be with you folks again later on. Mr. Daniels (former mgr.) has not arranged to be with us this season and had no authority to contract for anything this season.     Yours truly,     L. M. CRAWFORD."

At the time this letter was written there was no "existing contract" between the parties except the one which forms the basis of this action. The prior similar contract of March 27, 1919, had been

fully carried out. The statement, "N. Y. office desires to cut out all adv. (except newspaper) and will make no appropriation towards billboards or street cars," was in the nature of camouflage. The evidence disclosed there was no New York office, and no one there who had any interest in the controversy, or authority to make or refuse to make appropriations.

This letter was followed by correspondence in which plaintiff referred to its contract, expressed the view that it should be carried out, and defendants denied any responsibility for the contract, and contended that Daniels had exceeded his authority in executing it, asked plaintiff to discontinue the advertising Daniels had contracted, and stated defendants would not pay for it. Defendants declined to furnish any copy for the advertising, and plaintiff placed in the space contracted for by Daniels a card, "This space reserved for the Gayety theater, 14th and Locust street." This card was carried by plaintiff in all of the street cars of St. Louis for the time covered by the contract made with it by Daniels. Defendants declined to pay for any of this advertising, and plaintiff brought this action to recover the contract price of such advertising.

On behalf of appellants it is contended, first, that Daniels, under his employment as manager of the theater, had no express authority to execute for defendants the contract sued upon, and that if he had authority to contract for any advertising he had no authority to make a contract for advertising to begin after the end of Daniels' own term of employment. In answer to special questions the jury found that Daniels in March, 1920, was employed as manager of the Gayety theater for the theatrical season ending May, 1920, and that he was authorized to contract for street-car advertising for the theatrical season commencing in August, 1920; that he was so authorized by the defendants verbally at the time of his employment.

It is argued by appellants that there is no evidence to support these findings of the jury. It is true there is no evidence as to the exact words used at the time of Daniels' employment respecting any specific authority for making contracts for street-car advertising, nor is there anything in the record to disclose that this specific question was discussed at that time. There is evidence, however, that he was general manager of the theater, in full operating charge of it; that he prepared the copy and made contracts for all advertising for the theaters in newspapers, on billboards, by circulars and handbills,

and that the year before the contract in question he had executed and carried out a contract with plaintiff identical, except as to the time of its performance, with the contract in question, and that his acts and conduct in respect to all of this advertising were fully reported to defendants and the expense thereof charged to the business and accounted for in such report. We think that evidence justifies the answer made to the special questions by the jury. (2 C. J. 566, 643; *Banks Bros. v. Everest & Waggener*, 35 Kan. 687, 12 Pac. 141.)

Much of the argument of appellants is based on whether Daniels' act in executing the contract in question rests upon his implied authority, or the apparent scope of his authority, and is concededly not appropriate if Daniels had express authority to execute this contract. The jury having found that Daniels had express authority to execute the contract, and we having determined that this finding is supported by evidence, the distinction made by appellants with respect to implied authority, or apparent scope of authority, of an agent can be passed by.

Appellants argue that Daniels had no authority to execute a contract to begin after his own term of employment had expired and to extend for a future time. There is not much merit in this contention. Contracts are usually made with respect to things to take place in the future as distinct from the present or the past. To say that a firm or corporation might properly refuse to carry out a contract made on its behalf by its manager or agent, otherwise duly authorized, simply because the term of service of such agent was to terminate, or would be terminated, before the contract could be fully carried out, is a doctrine which we cannot approve.

Appellants contend that the court applied an incorrect measure of damages. This contract was executed in Missouri and is concededly governed by the laws of that state. In similar contracts executed in the state of Missouri and interpreted by the courts of that state it has been held that the measure of damages is the agreed contract price, and this holding accords with our judgment. (*Collier v. Domino Mfg. Co.*, 215 Mo. App. 345; *Missouri Retail Hardware Ass'n v. Planters' Operating Co.*, 294 S. W. 755 [Mo. App.]. See, also, *West. Grain Co. v. Barron G. Collier, Inc.*, 163 Ark. 369.)

Appellants argue that the partnership which had employed Daniels changed by reason of the death of one of the partners, which put an end to this partnership and everything connected with it. This point

has little merit. The partnership was really a family affair. One of the children dropped out by reason of death, and the father put in another. The business went on; the Gayety theater was conducted. It is true another manager was employed for the theatrical season beginning in August, 1920, and defendants undertook to ignore the contract in controversy; otherwise the business went on as usual.

Complaint is made of the instructions. The court gave instructions as to the rights of the parties if the jury found that Daniels had express authority to execute the contract, if he had implied authority to do so, and if his doing so was in the apparent scope of his authority. Since the jury found he had express authority, the instructions on the other theories become immaterial.

The judgment of the court below is affirmed.