(643 P.2d 1156)
No. 53,709

BUCHER & WILLIS CONSULTING ENGINEERS, PLANNERS AND ARCHITECTS, *Appellee,* v. JAMES K. SMITH, Administrator of the Estate of August Ziebell, deceased, and ROBERT C. JOHNSON, *Appellants.*

Opinion filed April 29, 1982.

*Robert C. Johnson,* of Herington, for the appellant.

*John W. Mize,* of Clark, Mize & Linville, Chartered, of Salina, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BULLOCK, J.: This is an appeal from a summary judgment awarding professional surveying fees, uncontested in amount, to plaintiff engineers for surveying work done on property owned by defendant estate. The action was originally filed against both the estate and Robert C. Johnson, the attorney for the estate who allegedly ordered the survey. The judgment below dismissed Johnson personally as a party and found generally in favor of the plaintiff on the theory of quasi contract. The estate has appealed and plaintiff has cross-appealed with respect to the dismissal of Johnson, limiting its request, however, to reinstatement of Johnson as a party only if the summary judgment against the estate is overturned on appeal.

The only disputed fact concerns whether Johnson actually *ordered* the survey to be done or merely solicited an *estimate* of the cost of such a survey for presentation to and authorization by the administrator. In the estate's brief to this court, and at oral argument, Johnson, on behalf of the estate, represented that an affidavit was filed in the trial court, in response to plaintiff's motion for summary judgment, to the effect that Johnson had merely sought a price quotation from plaintiff and that Johnson expressly told plaintiff that the administrator would have to personally authorize any actual work. Unfortunately for the estate, no such affidavit appears in the record on appeal and under familiar appellate rules we are bound to assume there was none.

Laying aside all questions concerning the missing affidavit and its contents, there is no dispute concerning the events which transpired subsequent to the initial contact between Johnson and plaintiff. A recitation of these undisputed facts follows.

On or about September 11, 1979, plaintiff wrote Johnson a letter regarding difficulties they were having in completing the survey for the estate. Johnson made no reply to this letter. On January 11 and 23, 1980, Johnson called plaintiff to request delivery of the survey for use in a possible sale of the estate's land. The survey was subsequently delivered by plaintiff to Johnson and accepted by him on January 28, 1980.

Upon presentation of a bill for $4,125, the survey allegedly first came to the attention of the administrator. The administrator, on behalf of the estate, declined to pay the bill.

Plaintiff filed suit against the estate on the theory that Johnson had acted throughout as the legal agent for the estate, and, in the alternative, against Robert C. Johnson, personally, should it be determined that he had not acted as the legal agent for the estate in his dealings with plaintiff.

On September 4, 1981, the trial court granted plaintiff summary judgment in quasi contract against the estate. Johnson was dismissed as a party and the case was set for trial on damages alone. On September 11, 1981, the estate stipulated the value of the services performed was $4,125.

Two questions are raised by the estate for our review.

1. The first question concerns whether, as attorney for the estate, Johnson was an agent of the estate and its administrator with sufficient authority to bind the estate to pay for the cost of the surveying work performed by plaintiff. In our view, the answer to this question is yes. In *Miotk v. Rudy,* 4 Kan. App. 2d 296, 300, 605 P.2d 587, *rev. denied* 227 Kan. 927 (1980), we said that, although an attorney cannot settle a case without the client's express authorization:

"It is clear that the relation of attorney and client is one of agency and the general rules of law that apply to agency apply to that relation. *Pearcy v. First National Bank,* 167 Kan. 696, 208 P.2d 217 (1949). The law recognizes two distinct types of agency, actual and ostensible or apparent. *Brown v. Wichita State University,* 217 Kan. 279, 286, 540 P.2d 66 (1975), *vacated in part on other grounds* 219 Kan. 2, 547 P.2d 1015 (1976). The evidence is uncontradicted that Logsdon lacked actual authority to settle plaintiff's case and there is no issue in that regard. However, the liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent as are within the apparent scope of the authority conferred on him, although no actual authority to do such acts or to make such contracts has been conferred, are also binding upon the principal. Apparent authority, or ostensible authority as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing. Accordingly, an apparent agent is one who, with or without authority, reasonably appears to third persons to be authorized to act as the agent of another. *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 268, 553 P.2d 254 (1976), quoting *Greep v. Bruns,* 160 Kan. 48, 55-56, 159 P.2d 803 (1945)."

It is elementary that an agent contracting on behalf of a principal binds the principal if the contract is authorized. As previously noted in *Miotk,* the law recognizes two principal types of agency authority, actual and apparent.

A review of the authorities reveals that the apparent authority of an agent to bind the principal rests upon words or conduct of the principal which leads the third party dealing with the agent to reasonably believe the agent's authority is sufficient to cover the transaction in question. In some cases, of course, the words or conduct of the principal are overt and explicit. In other cases, the mere relationship between the agent and principal or the title conferred upon the agent by the principal is sufficient to constitute a representation of some authority. Illustrative cases include the so-called "powers of position," examples of which are: general manager (*Hull v. Manufacturing Co.,* 92 Kan. 538, 141 Pac. 592 [1914], and *Western Advertising Co. v. Crawford,* 128 Kan. 145, 276 Pac. 813 [1929]); president (*Solomon Rld. Co. v. Jones,* 30 Kan. 601, 2 Pac. 657 [1883]); and partner (*Belluomo v. KAKE TV & Radio, Inc.,* 3 Kan. App. 2d 461, 596 P.2d 832, *rev. denied* 226 Kan. 792 [1979]). Into this category, the relationship of attorney-client falls.

In our view, the mere appointment of Johnson as attorney for the estate clothed him with sufficient apparent authority to obligate the estate for services, such as the survey, which were routinely and directly connected with the administration of the estate. This apparent authority, conferred by the employment of the attorney to represent the estate, is precisely the type of authority recognized in *Reimer v. Davis,* 224 Kan. 225, 580 P.2d 81 (1978) (an attorney has apparent authority to control procedural matters incident to litigation) and *Smith v. Ward,* 161 Kan. 453, 169 P.2d 93 (1946) (an attorney who has recovered judgment for a client has authority, by virtue of his employment, to receive payment and enter satisfaction of that judgment). In our view, these cases are in accord with the better reasoned of the general authorities recognizing the apparent authority of an attorney to obligate the client to pay for expenses incurred incidental to litigation, such as witness, detective, appraiser, stenographer, expert, and printing fees. See 7 C.J.S., Attorney & Client § 140, p. 180, and Annot., 15 A.L.R.3d 536.

Accordingly, we hold Johnson was the agent of the estate and, as such, clothed with sufficient apparent authority to bind the estate to pay for surveying work performed for the estate.

2. The second question concerns whether under the facts

before us, Johnson, as agent, *did in fact* bind the estate to pay for the surveying services performed by plaintiff.

Once again laying aside the question of whether Johnson actually *ordered* the work in question (or merely sought a price quotation for the same), there is no dispute that Johnson, as agent for the estate:

a. received a report of work in progress from plaintiff, to which no objection was made;

b. twice demanded *delivery* of the survey for the use of the estate in negotiating the sale of the estate's property; and

c. accepted and retained the completed survey when it was delivered to him by plaintiff in January of 1980.

Under these facts, we have no hesitancy in holding as a matter of law that the conduct of Johnson, when viewed by a reasonable person in the position of plaintiff, would be reasonably understood to constitute an undertaking by the estate to pay for that which it demanded and received. Even if we assume Johnson initially advised plaintiff that the personal authority of the administrator would be required before the work could proceed, Johnson's subsequent conduct, again when viewed by a reasonable person in the position of the plaintiff, could only be taken to indicate he had obtained that authorization.

The trial court enforced Johnson's undertaking on behalf of the estate under the legal theory of quasi contract. Quasi contract was defined in *Minnesota Avenue, Inc. v. Automatic Packagers, Inc.,* 211 Kan. 461, Syl. ¶ 1, 507 P.2d 268 (1973), as follows:

"Quasi contracts are contracts implied in law. They are not true contracts, but are obligations imposed by law for the purpose of doing justice without reference to the intention of the parties."

In the opinion of the trial court, the application of this legal principle to the facts before us required the judgment rendered. We concur.

In summary, we hold that an agent who, with apparent authority, demands, receives and accepts services on behalf of the principal, obligates that principal (in quasi contract, if no actual contract can be proved) to pay for those services.

Inasmuch as we affirm the judgment of the trial court below, plaintiff's cross-appeal is moot.

Affirmed.