**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of The Merchants Bank, Plaintiff,**

v.

**MEDMARK, INC., et al., Defendants.**

No. 94–2394–KHV.

United States District Court, D. Kansas.

Sept. 20, 1995.

# 1432

John M. McFarland, Gage & Tucker, Overland Park, KS, Major W. Park, Jr., Terry J. Brady, Janet L. Chleborad, Gage & Tucker, Kansas City, MO, for Federal Deposit Insurance Corporation.

Don R. Lolli, Michael S. Crowe, Steven D. Lance, Beckett, Lolli, Bartunek & Beckett, Kansas City, MO, for Medmark, Inc., Mike Alexander, Edgar Ellyson, Bruce Shalberg, Mary Shalberg, Medical Industries Management Inc.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Defendants Medmark, Inc.'s, Bruce Shalberg's and Mary Sue Shalberg's, and Edgar Ellyson's First Motion in Limine* (Doc. # 98) and *Defendants Medmark, Inc.'s, Medical Industries Management, Inc's, Bruce Shalberg's and Mary Sue Shalberg's, and Edgar Ellyson's Second Motion in Limine* (Doc. # 100), both filed June 23, 1995, and defendants' *Motion to Exclude Testimony of Craig Shy from Consideration* (Doc. # 157) filed September 13, 1995. On August 10, 1995, the Court entered an *Order* (Doc. # 139) sustaining defendants' first and second motions in limine, based on the parties' showing at and prior to the status conference held on August 9, 1995. Specifically, the Court found that plaintiff had not sufficiently established the foundation and authenticity of Medmark's second corporate borrowing resolution dated March 11, 1991, and that plaintiff had not shown that the resolution was not hearsay. In addition, the Court found that plaintiff had not established the relevancy of Jerry Grover's borrowing authority with respect to Akron Catheter, Inc. and Medical Industries Management, Inc. ("MIMI"). The order provided plaintiff an opportunity to seek reconsideration of the Court's rulings and set an evidentiary hearing for September 11, 1995. Based on the evidence received at that hearing, the Court concludes that the corporate borrowing resolution dated March 11, 1991 is admissible but that Grover's borrowing authority with respect to Akron Catheter and MIMI is irrelevant to the issues in this case.

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), as Receiver of The Merchants Bank (the "Bank"), seeks to recover under certain promissory notes executed on behalf of defendant Medmark, Inc. and related guaranties executed by defendants Edgar Ellyson and Bruce Shalberg.[1] Specifically, the Bank seeks to recover under (1) a promissory note in the amount of $270,000 dated April 9, 1991; (2) a promissory note in the amount of $200,000 dated May 15, 1991; (3) a promissory note in the amount of $60,000 dated July 22, 1991; and (4) a promissory note in the amount of $800,000 dated September 26, 1991. Jerry Grover, president of Medmark, signed all four notes.

Defendants claim that Grover did not have authority to execute the foregoing notes, citing a corporate resolution dated March 7, 1988, wherein the Medmark board of directors authorized Medmark to borrow funds only with approval of all five corporate officers.

### Corporate Borrowing Resolution dated March 11, 1991

In addition to the March 7, 1988 resolution, the Bank had in its files a resolution dated

---

1. Plaintiff also had sought to recover under a promissory note executed on behalf of MIMI and a guaranty executed by Mary Sue Shalberg. The Court has entered orders sustaining plaintiff's motion for summary judgment as to MIMI, *see* *Memorandum and Order* (Doc. # 136) dated August 7, 1995, and Mrs. Shalberg's motion for summary judgment, *see Memorandum and Order* (Doc. # 137) dated August 9, 1995.

March 11, 1991, which purportedly authorized Medmark to borrow funds upon approval by any one of the five corporate officers. The Medmark directors claim that they never adopted such a resolution, but it bears the signature of Gary Morsch, secretary of Medmark, witnessed by director Michael Alexander. Morsch and Alexander admit that their signatures appear on the resolution; however, they deny that they signed the resolution in its current form.

Defendants contend that plaintiff has not established sufficient foundation as to the origination and authenticity of the March 11, 1991 resolution. At the time of the status conference, the record suggested that nobody recollected how the second resolution had made its way to the Bank's files. Craig Shy, the loan officer with the most knowledge of the Medmark loans, testified in his July, 1994 deposition that he did not recall being involved in the process of obtaining the resolution, nor did he know how the resolution was sent to Medmark or returned to the Bank. Shy testified that he did not see anyone sign the resolution, that he did not recall giving the resolution to Grover, that he had no personal recollection of the preparation of the resolution, and that he had no personal knowledge whether the resolution was "real."

By the time of the evidentiary hearing, Shy's memory had dramatically improved, and he testified to the following facts: On or about March 12, 1991, after the Bank had approved a $60,000 loan to Medmark and Akron, Shy told Grover that he could pick up the loan documents for signatures. Grover stated that it was inconvenient for all five Medmark directors to sign the promissory note and asked if only one director could sign on behalf of Medmark. Grover said that the Medmark board had approved a resolution which authorized borrowing with approval of only one director, and that the directors were the same as those listed in the earlier resolution. After this conversation, Shy directed Marie, in the Bank's loan preparation department, to prepare a new resolution authorizing one director to sign on behalf of Medmark. After the new resolution was prepared, Grover signed the loan documents and took the new corporate resolution to be

signed. The signed corporate resolution landed on Shy's desk the next day, March 13, 1991, and the Bank thereupon made its first advance on the new loan.

Defendants contend that the March 11, 1991 resolution is an incomplete document, because the signature blanks on the first page are unsigned, the resolution bore a yellow post-it note stating "see attached for signature facsimiles," and Shy did not recall at his deposition whether there was an attachment to the resolution in the Bank's file. At the evidentiary hearing, however, Shy testified that the Bank did not routinely require signatures on the first page of the resolution, as long as the Bank already had the directors' signatures on file. Shy further testified that a copy of the first page of the March 7, 1988 resolution, containing the signature of each Medmark director, was attached to the March 11, 1991 resolution in the Bank's file.

Defendants urge the Court to disregard Shy's testimony at the evidentiary hearing because it directly contradicts his prior deposition testimony. Defendants contend that because of the potentially dispositive effect of the Court's ruling on the motions in limine, the Court should follow the line of cases which, in the summary judgment context, have found that a non-moving party cannot use affidavits which directly contradict a witness's prior deposition testimony to create an issue of fact and defeat summary judgment.

The Court is not persuaded by the summary judgment cases cited by defendants. In those cases, the witnesses' "new" affidavits were directly contrary to prior deposition testimony. *See, e.g., Franks v. Nimmo,* 796 F.2d 1230, 1236 (10th Cir.1986). Here, Shy's testimony at the hearing did not directly contradict his prior deposition testimony. At his deposition, Shy stated that he had no personal recollection of the circumstances surrounding the preparation of the March 11, 1991 resolution. At the evidentiary hearing, Shy testified that his memory had been refreshed by his review of Bank files two to three weeks before the hearing. Although Shy's change in testimony certainly creates a credibility issue for the jury, a reasonable

jury could believe that Shy truly did not recall the information at the time of his deposition and that he remembered it shortly before the evidentiary hearing. This is not one of those unusual cases where the witness's new testimony creates only a sham fact issue.[2] *See id.* at 1237.

■ A reasonable jury could believe—based on both Shy's testimony and the admissions by Morsch and Alexander—that the March 11, 1991 corporate resolution is authentic and/or properly identified. Rule 901(a) of the Federal Rules of Evidence is therefore satisfied. Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The rule treats preliminary questions of authentication and identification as matters of conditional relevance governed by the standards of Rule 104(b). *See* Advisory Committee Notes to Rule 901(a); J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 901(a)[01], at 901–15 (1995). Rule 104(b) provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

■ Defendants claim that the March 11, 1991 resolution is inadmissible hearsay. Plaintiff argues convincingly, however, that if the jury finds that the resolution is genuine, it constitutes an admission under Rule 801(d)(2)(C) and (D) and therefore is not hearsay.

■ In the alternative, plaintiff asserts that even if the Medmark board did not adopt the March 11, 1991 resolution, it is admissible to show that Grover had apparent authority to borrow the funds. Under this theory, plaintiff contends that the resolution is not hearsay because it is not offered to prove the truth of the matter asserted—*i.e.,* that the Medmark board of directors in fact adopted the resolution. The Court agrees.

■ Apparent authority exists where a principal, either intentionally or negligently, creates an appearance that its agent possesses authority to act or contract in the name of the principal, and a third party reasonably relies on that appearance of authority. *See Hamilton Hauling, Inc. v. GAF Corp.,* 719 S.W.2d 841, 846 (Mo.App.1986); *Bucher & Willis Consulting Engineers, Planners and Architects v. Smith,* 7 Kan.App.2d 467, 470, 643 P.2d 1156, 1159 (1982). Here, Medmark put Morsch and Alexander in the position to sign corporate resolutions, and a jury could find both that their signatures on the March 11, 1991 resolution created apparent authority for Grover to borrow funds on behalf of Medmark, and also that the Bank reasonably relied on that authority. *See Schmidt v. Farm Credit Services,* 977 F.2d 511, 516 (10th Cir.1992) (purportedly valid borrowing resolution can be persuasive evidence of reasonableness of lender's reliance, but it is not determinative). Thus, even if the Medmark board did not actually adopt the March 11, 1991 resolution, it is nonetheless admissible as proof of apparent authority created by the signatures of Morsch and Alexander on the document.[3]

### Borrowing Authority of Jerry Grover

■ Plaintiff also seeks to introduce into evidence the corporate resolutions of Akron Catheter and MIMI, Medmark's sister and

---

**2.** Defendants also claim that the Court should preclude Shy's testimony because Shy did not supplement his deposition testimony regarding his refreshed memory within 30 days after the transcript was available, as provided in Rule 30(e) of the Federal Rules of Civil Procedure. While this may be a powerful subject for cross-examination and impeachment purposes, it does not constitute sufficient grounds to preclude Shy from testifying all together.

**3.** Defendants argue that there is no apparent authority in this case because the Bank had actual knowledge of the March 7, 1988 resolution which authorized borrowing only with the signatures of all five directors, *see In re Branding Iron Motel, Inc.,* 798 F.2d 396, 401 (10th Cir. 1986) (apparent authority vanishes in presence of actual knowledge of scope of agent's authority or when third party has knowledge of facts which would put it upon inquiry as to actual authority of agent); however, whether the Bank had actual knowledge or should have known or inquired into the scope of Grover's authority is a question of fact for the jury.

parent corporations, respectively. The Akron and MIMI resolutions authorized Michael Alexander (Vice President) and Jerry Grover (President) to borrow on behalf of Akron and MIMI based on one signature alone. Plaintiff contends that based on the corporate relationships between Medmark and its related corporations, the Akron and MIMI resolutions make it more probable that Medmark similarly authorized Grover to sign alone to bind Medmark.

Plaintiff contends that under Rule 406, the Akron and MIMI resolutions are admissible as evidence of routine practice of an organization to prove that the conduct of the organization was in conformity with its routine practice; however, plaintiff has not established that Akron, MIMI and Medmark constitute an "organization," or that the routine practice of that organization permitted Grover to singlehandedly incur debt on behalf of Medmark. Thus, the Akron and MIMI corporate resolutions are not evidence of the routine practice of Medmark and plaintiff has not shown that they are relevant to the Bank's decision to loan funds to Medmark.

Plaintiff also asserts that the Akron and MIMI resolutions are relevant to show the reasonableness of the Bank's reliance on the apparent authority created by the second Medmark resolution. Shy testified at the evidentiary hearing that in loaning funds to Medmark, however, the Bank relied solely on the corporate resolutions of Medmark, not the resolutions of Akron and MIMI. Thus, plaintiff has not demonstrated that the Akron and MIMI resolutions are relevant to the reasonableness of the Bank's reliance on the second Medmark resolution.

**IT IS THEREFORE ORDERED** that the Court's *Order* (Doc. # 139) dated August 10, 1995, should be and hereby is vacated with respect to *Defendants Medmark, Inc.'s, Bruce Shalberg's and Mary Sue Shalberg's, and Edgar Ellyson's First Motion in Limine* (Doc. # 98) filed June 23, 1995, and that motion should be and hereby is overruled.

**IT IS FURTHER ORDERED** that the Court's *Order* (Doc. # 139) dated August 10, 1995, should be and hereby is affirmed with respect to *Defendants Medmark, Inc.'s, Medical Industries Management, Inc.'s,*

*Bruce Shalberg's and Mary Sue Shalberg's, and Edgar Ellyson's Second Motion in Limine* (Doc. # 100) filed June 23, 1995.

**IT IS FURTHER ORDERED** that defendants' *Motion to Exclude Testimony of Craig Shy from Consideration* (Doc. # 157) filed September 13, 1995, should be and hereby is overruled.