Nicola A. CUBIE, Plaintiff,

v.

**BRYAN CAREER COLLEGE, INC.,
and David Bryan, Defendants.**

No. 01–4120–JAR.

United States District Court,
D. Kansas.

Jan. 28, 2003.

1192

Rebekah A. Phelps-Davis, Phelps-Chartered, Topeka, KS, for Plaintiff.

James S. Pigg, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT AND MOTION FOR SUMMARY JUDGMENT

ROBINSON, District Judge.

This matter is before the Court on defendants' Motion for Summary Judgment (Doc. 19) and Motion to Strike Affidavit (Doc. 36). Plaintiff filed a response (Doc. 31) in opposition to defendants' Motion for Summary Judgment, and defendants filed a reply (Doc. 35). Plaintiff filed a response (Doc. 37) to defendants' Motion to Strike Affidavit and defendants filed a reply (Doc. 38). After consideration of the parties' pleadings, the Court is prepared to rule. For the following reasons, defendants' motions are granted.

## I. Uncontroverted Facts

The Court considers the following facts undisputed and views them in the light most favorable to the plaintiff, Nicola Cubie ("Cubie"). Immaterial facts, or those not supported by the record, have been omitted. Cubie is a 27–year old married female with two children. Cubie attended courses, off and on, at Bryan Career College ("BCC") from March 16, 1999 through August 26, 1999. Clifford Funk ("Funk") attended BCC at the same time as Cubie. Funk was in Cubie's first class, Math, and Q Basic, but was not a student in her other classes. Cubie alleges that Funk touched her on the shoulder/back area on three occasions and once on the mid-thigh area. These touchings occurred during the first five weeks of Cubie's enrollment at BCC, during Math class, and lasted a matter of a few seconds each time.

Cubie also alleges that Funk asked her eight to ten times to go out behind the building to smoke with him. Cubie often smoked in front of the building, which was not a designated smoking area. Funk also followed Cubie outside the building for smoking breaks several times. Funk offered on three or four occasions to come to Cubie's home to work on her computer. Funk asked Cubie's neighbor whether anyone had been to her house to fix her

computer. He also asked other class members if they had worked on her computer. Funk asked Cubie once to go to The Dugout, a tavern adjacent to BCC, to have a beer with him, by themselves. Cubie declined. Funk asked Cubie to go to The Dugout other times, but his invitation was extended to a group, not just Cubie, individually.

On August 24, 2001, Cubie filed this action under Title IX of the Education Amendments of 1972 [1] action, alleging sexual harassment by a fellow student, failure of BCC to take appropriate action when confronted with allegations of harassment and retaliation by BCC against Cubie for reporting the alleged harassment to them. Cubie earlier filed an action in Shawnee County District Court, on January 24, 2000 alleging sexual harassment, based on the same incidents at issue in this action, in violation of the Kansas Act Against Discrimination (KAAD) [2] and 42 U.S.C. § 1983. Defendant David Bryan was dismissed from the state court action by agreement of he and Cubie and based on his stipulation that his alleged actions were done within the scope of his employment. Because Cubie had failed to exhaust administrative remedies, Judge Terry Bullock granted BCC's motion for summary judgment and dismissed the state court action.

Defendants have moved for summary judgment in this matter. Defendants have also moved to strike Cubie's affidavit, submitted in response to defendants' motion for summary judgment, alleging it is an attempt to create sham issues of fact. Each motion will be dealt with in turn.

## II. Motion to Strike Affidavit

### A. Standard

In determining if an affidavit is merely a "sham" to create issues of fact, the Tenth Circuit has held that:

> whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements. In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue. [3]

The court considers several factors when making this determination, including:

> whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. [4]

In conjunction with this test, the court can consider that a plaintiff responding to a summary judgment motion cannot rest on mere allegations, but must assert specific facts, by affidavit or otherwise. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial. [5]

### B. Discussion

 In opposition to defendants' Motion for Summary Judgment, Cubie filed a re-

---

1. 20 U.S.C. §§ 1681—1685 (1999).

2. K.S.A. § 44–1001 (1993).

3. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986) (citations omitted); *Burton v. R.J. Reynolds Tobacco Co.*, 181 F.Supp.2d 1256, 1269 (D.Kan.2002).

4. *Id.*

5. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations omitted) (emphasis added).

sponse that included her sworn affidavit, sixteen pages detailing what she alleges are the facts supporting her claims. Some 18 months before creating this affidavit, Cubie was deposed during the state court action about the events underlying her state court complaint. Defendants' counsel examined her; and Cubie's counsel cross-examined her in the deposition.[6]

Defendants move to strike Cubie's affidavit, as an attempt to create sham issues of fact, with numerous factual assertions that she did not testify to in her earlier deposition. Defendants argue that Cubie's affidavit should be stricken as an untimely amendment to her earlier deposition testimony. The affidavit was given some 18 months after the deposition testimony; and K.S.A. § 60–230(e), allows a deponent only 30 days to correct or amend her deposition testimony, once receiving notice that the deposition transcript is available.[7] But Cubie does not submit the affidavit as a correction or amendment of her earlier deposition testimony. Rather, she submits the affidavit in accordance with Fed. R.Civ.P. 56(e) to support her statements of controverted facts in opposition to summary judgment.[8]

Nothing suggests that Cubie was unable to testify to these facts during her deposition. Nothing in her affidavit is newly discovered evidence; all of the newly described incidents occurred before the time of the deposition, and were incidents that were perceived by Cubie, as the victim of the alleged harassment. Nothing suggests that any of the newly described incidents were not within Cubie's knowledge and memory at the time of her deposition.[9] Moreover, the deposition questions were crafted to elicit facts that would have been relevant in both her state and federal claims.

Cubie acknowledges that her affidavit asserts facts that she did not testify to. She denies that the affidavit contradicts her earlier deposition testimony. Rather, she considers the affidavit a supplement and clarification of her deposition testimony, explaining that her state action was based on different legal theories than her claims in this action; and that no one examined her about these factual matters during the deposition. Cubie states that the deposition questions were so narrowly tailored, that she could not testify to the full scope of Funk's harassment of her.

Cubie's position is very similar to the plaintiff in *Lantec, Inc. v. Novell*[10] whose

---

**6.** In the state court action, Cubie was represented by counsel Fred W. Rausch, Jr; in this action she is represented by counsel Rebekah J. Phelps–Davis.

**7.** "Unless waived by the deponent and by the parties, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making such changes. The officer shall indicate in the certificate prescribed by subsection (f)(1) whether the deposition was reviewed and, if so, shall append any changes made by the deponent during the period allowed." Kan.

Stat. Ann. § 60–230(e) (1994). This rule is analogous to Fed.R.Civ.P. 30(e).

**8.** Fed.R.Civ.P. 56(e) "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

**9.** *Cf. Federal Deposit Ins. Corp. v. Medmark, Inc.*, 902 F.Supp. 1430, 1433–34 (D.Kan. 1995) (holding that a change in testimony was not done to create a sham issue of fact where affiant testified that his memory was refreshed by reviewing bank files).

**10.** 306 F.3d 1003, 1017 (10th Cir.2002).

affidavit included facts about a private conversation he did not disclose during his deposition. During his deposition, that plaintiff was asked whether defendant was receptive to a discussion about a certain matter.[11] After plaintiff testified that "it was discussed,"[12] counsel asked questions seeking further clarification from plaintiff. While testifying about a discussion they had during a meeting, plaintiff never disclosed that the matter was further discussed during a separate, private conversation. The Tenth Circuit rejected plaintiff's explanation that the deposition questions were too narrow to elicit his testimony about the private conversation, finding that nothing in the line of questioning should have indicated to plaintiff that he was to limit his answers to only the discussion at the actual meeting.[13]

This Court has carefully scrutinized the affidavit and the deposition transcript, and finds Cubie's arguments entirely frivolous. As detailed below, Cubie was examined about the facts she now newly asserts in her affidavit, in repeated questions propounded by defendants' counsel, and even in a question propounded by Cubie's counsel during his brief cross-examination of Cubie. While the questions on direct examination were narrow, they were framed broadly enough to seek Cubie's testimony about all instances of alleged harassment by Funk. Cubie had repeated opportunities during her deposition to testify about incidents in which Funk harassed her, both during their math class, and at later times during her time at BCC.

As revealed in the following excerpts of the deposition transcript, juxtaposed with averments in Cubie's affidavit, Cubie had

no reasonable basis to think she was being deposed only about some of the alleged incidents of harassment.

**Seating Arrangement**

*Deposition:*

Q. And what was the nature of your acquaintance with him [Funk] in the class?

A. The first night I was ten minutes late and the only seat left was next to Cliff, so that's where I obviously sat.

. . .

Q. Did he [sic] continue to sit next to him the rest of the time in that class?

A. No.

Q. Did you ever sit next to him again in that class?

A. Yes.

Q. So it was just sporadically you would be next to him?

A. A few more times.

Q. About how many times total?

A. Four.[14]

. . .

Q. Now, you said something to the effect that he would demand that you sit by him. How many times did he do that?

A. About four times.

Q. In the course of -

A. Math.[15]

**Compare to:**

*Affidavit:*

During the math class . . . Clifford Funk insisted on sitting by me every night.[16]

11. *Id.* (internal quotations omitted).

12. *Id.*

13. *Id.*

14. Plaintiff's Deposition, p. 19–20.

15. Plaintiff's Deposition, p. 28.

16. Plaintiff's Affidavit, p. 3, ¶ 9.

**Unwanted Touching:**

*Deposition:*

A: [T]here was a few times that he would-he had touched, you know, tried to caress my shoulder and my arm, and one time when I had sat by him that he put his hand on my thigh.[17]

. . .

Q. Tell us about this incident where you say he tried to caress your shoulder.

. . .

Q. Okay. Did he touch your shoulder on any other occasion?

A. Yeah, he did outside two different times . . . . .

. . .

Q. Okay. Any other occasions that [sic] hand touched your shoulder other than those three times?

A. Not that I can think of, no.

Q. Did those all occur while you were in the math class?

A. Yes.

Q. Okay. You said he touched your thigh on one occasion. When did that happen?

A. Inside of math class . . . .

. . .

Q. Did he ever touch you again?

A. No.

. . .

Q. Did he ever touch you again after the third time he touched your shoulder?

A. No, he didn't put his hands on me again.

Q. So all the times he touched you occurred during the first five weeks that you were there at the school in the math course?

A. Yes.[18]

. . .

Q. Was there later some other things that happened after the math class?

A. Well, in Q Basic, he took the seat directly in front of me because I made sure to have Jim and Ty take the seats next to me because that class, where you sat the first night is where you sat the five weeks . . . [b]ut he would turn around and stare at me for long periods of time.[19]

**Compare to:**

*Affidavit:*

I was never questioned about a lot of sexual harassment that I suffered at the hands of Clifford Funk while attending Bryan Career College.[20]

While attending this class [Math class], Clifford Funk touched my thigh, upper back, shoulder area, hands and hair three or four times a week.[21]

Clifford Funk was not in this class [Introduction to Computers], but he came into the classroom two or three times a week. When he came into the classroom, he sat down in a chair next to me when it was vacant, and touched my hands, thigh, shoulder and hair. Also on at least six occasions during this five week period, during class break times, Clifford Funk followed me outside and touched my arms and mid-back area.[22]

During this period of time [one week in Q Basic], during breaks, Clifford Funk touched my arm and shoulders and tried to hold my hand.[23]

---

17. Plaintiff's Deposition, p. 21.

18. Plaintiff's Deposition, p. 30–35.

19. Plaintiff's Deposition, p. 41.

20. Plaintiff's Affidavit, p. 1–2, ¶ 2.

21. Plaintiff's Affidavit, p. 2, ¶ 4.

22. Plaintiff's Affidavit, p. 2, ¶ 5.

23. Plaintiff's Affidavit, p. 3, ¶ 6.

During this course [Front Page], Clifford Funk came into the classroom about once a week, stood behind me, and touched my shoulders, upper back, arms and hair. During breaks, Clifford Funk followed me outside and touched my arms, shoulder and hair.[24]

During the class breaks [Introduction to Computers, re-take], he came up to me and touched me on my lower back, arms and shoulders.[25]

Cubie's counsel specifically cross-examined her about the number of times that Funk touched her.

*Deposition Cross-examination by Plaintiff's Counsel:*

Q. And that time he touched you on the shoulder was the only time he ever touched you on the shoulder, correct?

A. No.

Q. When else did he touch you on the shoulder?

A. He did three different times.[26]

### Reasons for Quitting Q Basic Course:

*Affidavit:*

After one week I quit the course [Q Basic] because I could not continue to endure what Clifford Funk was doing to me.[27]

### Compare to

*Deposition:*

Q. Why did you drop out of Q Basic?

A. I, I dropped out and switched over to software management because I didn't think programming was going to be right for me.[28]

As undeniably set out above, Cubie's affidavit offers nothing in the way of clarifying confusion from her deposition. It is apparent that she had every opportunity to identify all of the incidents of harassment she claims to have suffered at the hands of Funk. She was asked repeatedly, both by her counsel and by defendants' counsel, whether there were any other incidents, to which she responded there were not. This Court is left to conclude that Cubie's affidavit is either an outrageous exaggeration of the true facts or nothing more than false testimony, crafted to defeat a motion for summary judgment. As such, the affidavit cannot stand. This Court strikes the affidavit as an attempt to create sham issues of fact. Both Cubie and her counsel should be wary in the future of submitting documents to this or any court, which are on their face a complete contradiction of earlier sworn testimony, without any plausible justification for the contradictions.

### III. Motion for Summary Judgment

#### A. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[29] A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[30] An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the

---

24. Plaintiff's Affidavit, p. 3, ¶ 7.

25. Plaintiff's Affidavit, p. 3, ¶ 8.

26. Plaintiff's Deposition, p. 114.

27. Plaintiff's Affidavit, p. 3, ¶ 6.

28. Plaintiff's Deposition, p. 48.

29. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir. 1993).

30. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

nonmoving party.[31] The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact.[32] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[33] In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment.[34] If an inference can be deduced from the facts that would allow the nonmovant to prevail, summary judgment is inappropriate.[35]

## B. Discussion

Cubie brings this action under Title IX of the Education Amendment Act of 1972,[36] which provides in part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .[37]

Defendants argue that the state court's dismissal of defendant Bryan and grant of summary judgment in favor of defendant BCC bars plaintiff's claims and issues in this action under the doctrines of res judicata (also known as claim preclusion) or collateral estoppel (also known as issue preclusion). Defendants further argue that they are entitled to summary judgment because Cubie's claim does not allege harassment sufficiently severe, pervasive and objectively offensive to support a claim under Title IX. Defendants also argue that Cubie cannot show that BCC's response to the reported harassment expressed the deliberate indifference necessary to establish a Title IX claim. Finally, defendants argue that the individual claim against Bryan fails because Title IX subjects educational institutions to liability under Title IX, not individuals.

## 1. Res Judicata and Collateral Estoppel

 The doctrine of res judicata serves to bar a claim previously adjudicated. In determining whether res judicata applies, a federal court gives the state court judgment the same effect that it would be given by the state where the judgment was handed down.[38] Kansas uses three factors to evaluate the preclusive effect of res judicata: 1) "the first suit must have proceeded to a final judgment on the merits; 2) the parties must be the same or in privity; 3) the suits must be based on the same cause of action."[39] Within those factors, Kansas considers

---

**31.** *Id.*

**32.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okl.,* 942 F.2d 737, 743 (10th Cir.1991).

**33.** *Applied Genetics Intern., Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548).

**34.** *McKibben v. Chubb,* 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

**35.** *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (citation omitted).

**36.** 20 U.S.C. § 1681 et seq.

**37.** 20 U.S.C. § 1681(a).

**38.** *Y.K. Wong v. Smith,* 961 F.2d 1018, 1019 (1st Cir.1992) (citations omitted); *Knox v. Lederle Lab.,* 4 F.3d 875, 878 (10th Cir.1993) (stating that "[b]ecause this case concerns a judgment of the Colorado state courts, we look to Colorado law.").

**39.** *Grimmett v. S & W Auto Sales Co., Inc.,* 26 Kan.App.2d 482, 988 P.2d 755, 758 (1999).

whether the parties were fully heard, whether the decision was supported by a reasoned opinion and whether the decision was subject to or reviewed on appeal.[40]

■■■ The doctrine of collateral estoppel requires the court to refrain from relitigating factual matters already decided in a previous court proceeding.[41] The Court is bound by factual determinations made in a previous court on issues where: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[42]

Both doctrines require an identity of parties, which exists here. Cubie was the plaintiff in the state court action; and BCC and Bryan were defendants in the state court action. Both doctrines require a substantive identity. The res judicata doctrine requires that the actions have common causes of action. Arguably, Cubie's state court action under § 1983 and the KAAD for sexual harassment and her current action under Title IX for sexual harassment are the same, because the standards are the same for Title VII and the KAAD.[43] And, with respect to actions under Title IX, the Tenth Circuit has held that Title IX claims should be analyzed under the same substantive standards as Title VII claims.[44] Moreover, these two actions are based on the same incidents and events,[45] and raise the same issues of fact concerning Funk's alleged harassment of Cubie and BCC's alleged indifference to that harassment. The Tenth Circuit uses the "transactional approach" when analyzing claims under the doctrine of res judicata.[46] Under this approach, a cause of action refers to any legal theories or claims that stem from the same events, transaction or occurrence.[47] All of Cubie's claims in state and federal court arise from the exact same set of events.

Both doctrines also require that the prior action resulted in a final judgment or adjudication on the merits. Because defendants BCC and Bryan bring to this action a different procedural history, this

**40.** *Id.*

**41.** *Murdock v. Ute Indian Tribe of Uintah and Ouray Reservation*, 975 F.2d 683, 687 (10th Cir.1992), *cert. denied*, 507 U.S. 1042, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993) [Federal principles of collateral estoppel apply to prior judgments that are rendered by a federal court].

**42.** *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir.1995) (quotations omitted).

**43.** *See Best v. State Farm Mutual Auto. Ins. Co.*, 953 F.2d 1477, 1480 n. 2 (10th Cir.1991) (noting that the Kansas Supreme Court is entitled to refer to Title VII, even though it was enacted after the KAAD, when it interprets the KAAD, and that court is then obliged to follow that interpretative tool as adopted by the Kansas Supreme Court). *See also Carreno v. IBEW Local No. 226*, 1990 WL 159199 (D.Kan.1990) (district court applied Title VII standards to KAAD claim because Kansas courts have done so).

**44.** *Roberts v. Colorado State*, 998 F.2d 824, 832–33 (10th Cir.1993); *Mabry v. State Bd. of Cmty. Coll. & Occupational Educ.*, 813 F.2d 311, 316–17 (10th Cir.1987). *See also Lipsett v. University of Puerto Rico*, 864 F.2d 881, 896–97 (1st Cir.1988) (holding that Title VII's substantive standards apply to Title IX sex discrimination claims).

**45.** *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1170 (10th Cir.2000) (holding that "cause of action" refers to whether the claims arise from the same transaction or events).

**46.** *Id.* (citing Restatement (Second) of Judgment § 24 (1982)).

**47.** *Id.*

Court separately analyzes whether the state court action resulted in a final judgment on the merits for purposes of res judicata. As for defendants' reliance on collateral estoppel, because this Court granted defendants' motion to strike the affidavit, and defendants' remaining arguments do seek to have the state court facts treated preclusively, this Court will not further analyze defendants' argument of collateral estoppel.

### a. David Bryan

■ In the state court action, Judge Bullock dismissed the claims against defendant Bryan without prejudice, on the agreed order and stipulation of Bryan and Cubie. Bryan was dismissed before BCC's motion for summary judgment was granted. Generally, a voluntary dismissal without prejudice is not a final judgment on the merits. Plaintiffs may be precluded from refiling a claim that they voluntarily dismissed, when the dismissal occurred after plaintiff received an adverse ruling.[48] But that did not happen here. Plaintiff's claim against Bryan is not barred by res judicata or collateral estoppel.

### b. BCC

■ In the state court action, Judge Bullock granted BCC's motion for summary judgment on the basis that Cubie had failed to exhaust her administrative remedies under the KAAD and § 1983. A summary judgment is generally recognized as a final judgment in both Kansas and federal courts.[49] A summary judgment on procedural grounds may be a final judgment on the merits.[50]

If Title IX actions were subject to the same administrative exhaustion requirements of Title VII and the KAAD, Judge Bullock's summary judgment ruling would be final adjudication on the merits that would preclude Cubie's Title IX claim in this action. But, since the Supreme Court's dicta in the *Cannon*[51] decision, it is widely accepted that Title IX has no administrative exhaustion requirement, because private individuals have no real participation in the investigation and enforcement proceedings of the agency administering Title IX.[52] Thus, Judge Bullock's order granting summary judgment does not preclude plaintiff's Title IX in this case.

**48.** *Id.* at 760 ("Voluntary dismissal and refiling a claim after an adverse ruling should not give a losing party a fresh start or second opinion.") (internal quotations omitted) (citations omitted).

**49.** *Stanfield v. Osborne Indus., Inc.,* 263 Kan. 388, 400, 949 P.2d 602 (Kan.1997) ("Federal courts treat a summary judgment as a judgment on the merits of the claim or defense."); 18 Wright, Miller and Cooper, Federal Practice and Procedure § 4444 (1981) ("Both claim preclusion and issue preclusion result from summary judgment that rest on the lack of any genuine issue of material fact going to the merits of claim or defense."); *Solien v. Physicians Bus. Network, Inc.,* 22 F.Supp.2d 1237, 1239 (D.Kan.1998) ("It is well established that summary judgment is a final judgment on the merits for purposes of res judicata.") (citations omitted). *See also Grimmett,*

988 P.2d at 759 (Kansas court finding summary judgment is a final decision on the merits).

**50.** *Solien,* 22 F.Supp.2d at 1239 ("[T]he mere fact that a dismissal is based on procedural grounds does not render the doctrine or res judicata inapplicable.").

**51.** *Cannon v. University of Chicago,* 441 U.S. 677, 706–08 n. 41, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

**52.** *See for e.g., Clay v. Board of Tr. of Neosho County Cmty. Coll.,* 905 F.Supp. 1488, 1495 (D.Kan.1995) (discussing lack of administrative remedies or individual relief provided in Title IX, citing *Cannon* as well as Justice Powell's dissent in *North Haven Bd. of Ed. v. Bell,* 456 U.S. 512, 551, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982)).

## 2. Title IX Burden

■ In *Davis v. Monroe County Board of Education,*[53] the Supreme Court held that student-on-student sexual harassment claims are actionable under Title IX. Following that decision, the Tenth Circuit set out four factors to use in evaluating a student-on-student harassment case under Title IX. Cubie must allege that BCC 1) "had actual knowledge of, and 2) was deliberately indifferent to 3) harassment that was so severe, pervasive and objectively offensive that it 4) deprived the victim of access to the educational benefits or opportunities provided by the school." [54] Defendants argue that the alleged conduct was not severe, pervasive and objectively offensive and thus is not actionable. They also argue that BCC was not deliberately indifferent to the alleged harassment.

### a. Actual Knowledge

In July and August of 1999, Cubie informed BCC, both in person and through written correspondence, of Funk's harassment of her. There is no question that defendants had actual knowledge of Cubie's complaints.

### b. Deliberately Indifferent

■ Cubie alleges that BCC was deliberately indifferent to her complaints about Funk's behavior. On July 27th, Cubie made her first complaint, to Wally Ballou, the college director. Cubie alleges that Ballou told her that she could not file a complaint because someone is "creep[ing] you out." [55] Cubie alleges that because Ballou did not plan to take any action about the complaint, Cubie and her friend wrote a note to "Monte," the vice-president of BCC, and slipped it under his door.

The very next day, BCC arranged and held a meeting between Cubie, defendant Bryan, Ballou, "Monte," Kelvin and another student who had met with Ballou the previous day. After their forty-five minute meeting, BCC personnel asked Cubie to type up her complaints and advised her that they would talk to Funk that night. Cubie also alleges that BCC personnel told her that if the complaints were substantiated, Funk would be removed from school. Cubie typed her complaint and turned it in. School was out on break until the following Monday, August 2nd. When classes resumed on August 2nd, Cubie met with Ballou and Tammy Say. They informed Cubie that they had met with Funk earlier and discussed the complaints with him. Cubie alleges that they told her that they advised Funk to focus on his work and leave her alone. Cubie also alleges that BCC personnel told her that BCC would not protect her from Funk nor would they kick him out if the problem persisted. But, Cubie also alleges that the teachers were aware of the situation and that they had structured their class breaks so that Funk and Cubie would not be out of class at the same time. Cubie further alleges that Funk leered at her and gave her frightening looks after that; and that when she reported this to BCC personnel, they again told her that they could not help her, and that they would not honor a restraining order if she obtained one. Cubie states that she had no problems with Funk at school after August 11th.

Cubie testified in her deposition, that she would not be satisfied with any action taken by BCC short of removing Funk from the school. The school's response to Cubie's complaints was to confront Funk

---

**53.** 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

**54.** *Murrell v. School Dist. No. 1,* 186 F.3d 1238, 1246 (10th Cir.1999).

**55.** Plaintiff's Deposition, p. 62.

with the allegations and change their class and break schedules to prevent them from encountering each other. Cubie does not have a right to demand Funk's expulsion.[56]

The school must not be deliberately indifferent to the complaints; however, this does not mean that expulsion is the only way the school can show it reacted reasonably. The Supreme Court rejected this contention.[57] Despite allowing student-on-student claims under Title IX, the courts will continue to refrain from "second-guessing the disciplinary decisions made" by schools.[58] A school's actions will only be deliberately indifferent when its response, or lack thereof, "is clearly unreasonable in light of the known circumstances." [59] And if a school's actions meet this test, the Supreme Court has blessed granting summary judgment in favor of the school.[60] The Supreme Court went on to explain in *Davis* that "it would be entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims." [61]

Under these facts, this Court cannot find that BCC acted with deliberate indifference. BCC did not sit idly by after being made aware of Cubie's complaints. The school met with Funk and discussed the problem with him. They told him to focus on his work and to leave Cubie alone. The school notified Cubie's instructors and her class break times were changed to prevent encounters with Funk. These actions were taken between August 2nd and 5th, the first week that school resumed.

Cubie testifies that she had no further problems with Funk at school after August 11th. While Cubie may have wanted Funk removed from BCC, she could not demand such a remedy. BCC acted in a way that they thought appropriately remedial. As *Davis* instructs, the reasonableness of a school's response should be evaluated in light of its concern that expelling a student might deny the student his or her right to an education and might subject the school to constitutional and statutory claims arising from the expulsion.

This Court simply cannot engage in second-guessing the disciplinary action chosen by BCC. The college intervened when given notice of the alleged harassment. Although Cubie alleges that the administration told her they would not help her, protect her or talk to Funk, their actions belie her allegations. BCC personnel spoke with Funk. BCC took action to protect Cubie from coming into contact with him. And, within a week, Funk's harassment of Cubie ceased. This Court finds that BCC did not act with deliberate indifference, but took reasonable action to address the alleged harassment.

### c. Severe, Pervasive and Objectively Offensive

■ Defendants further argue that the alleged harassment was not severe, pervasive and objectively offensive. Because this Court struck Cubie's affidavit filed in response to summary judgment, the harassment complained of consists of four

---

**56.** *Davis,* 526 U.S. at 648, 119 S.Ct. 1661

**57.** *Id* "( [This decision] does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action. We thus disagree with the respondents' contention that, if Title IX provides a cause of action for student on student harassment, 'nothing short of expulsion of every student accused of misconduct

involving sexual overtones would protect school systems from liability or damages.' ").

**58.** *Id.*

**59.** *Id.*

**60.** *Id.* at 649, 119 S.Ct. 1661.

**61.** *Id.*

incidents of touching—three times to the shoulder/back areas and once to the thigh—each lasting a few seconds. In addition, Funk stared or leered at Cubie, invited her to have a drink, offered to fix her home computer, and on one occasion, Funk confronted Cubie in the school parking lot, about her having withdrawn from a class.

 The severe and pervasive standard used in Title VII hostile environment cases, is employed in analyzing cases filed under Title IX.[62] The conduct must be so extreme that it interfered with or altered the conditions of Cubie's school environment, so that she was denied access to an educational opportunity or benefit.[63] Cubie's complaints about Funk staring at her add little credence to her claim of a severe or pervasive atmosphere. The four instances of unwelcome touching do not rise to the level of severe and pervasive.[64] This determination is made considering all circumstances surrounding the alleged harassment, the number of incidents, their duration, the severity and whether they were physically humiliating or threatening.[65] What Cubie relies on to support her case are mere isolated, infrequent incidents that occurred during the first five weeks of her classes at BCC. Each incident lasted a matter of seconds and Cubie's own testimony is that the other conduct, such as staring at her and asking to fix her computer, was not taken or intended as sexual in nature.[66] Cubie has not met the standard of severe and pervasive.

### d. Deprived Cubie of Access to Educational Benefits or Opportunities

Because this Court determined the alleged harassment is not severe and pervasive, it certainly could not have deprived Cubie of access to educational benefits at BCC. Cubie claims to have withdrawn from classes at BCC because she could not continue to suffer the harassment; however, by her own admission, the harassment ceased after August 11th and she did not stop attending classes until August 26th.

### 3. David Bryan's Individual Liability under Title IX

Defendants argue that David Bryan is not subject to liability as an individual under Title IX because the act speaks only to educational institutions. Because this Court finds that Cubie has not met her burden of showing a prima facie case of sexual harassment under Title IX, this argument will not be addressed.

### IV. Conclusion

No material issue of fact exists for trial in this matter. Cubie has not offered evidence sufficient for a prima facie claim of sexual harassment under Title IX. Defendants' Motion for Summary Judgment is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Strike Affidavit and Motion for Summary Judgment are **GRANTED.**

---

**62.** *Wills v. Brown Univ.*, 184 F.3d 20, 38 n. 8 (1st Cir.1999); *Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (citing to *Meritor Sav. Bank. FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

**63.** *Ebert v. Lamar Truck Plaza*, 878 F.2d 338, 339 (10th Cir.1989) (citing *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399).

**64.** *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir.1996) ("Casual or isolated manifestations of discriminatory conduct, such as a few sexual comments or slurs, may not support a cause of action.") (citations omitted).

**65.** *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

**66.** Plaintiff's Deposition, p. 37–38.

IT IS FURTHER ORDERED THAT this Case is DISMISSED.

IT IS SO ORDERED.